# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

KATHRYN H. MERLAN,

      Plaintiff,

v.                                          Case No. 3:04cv264/LAC

TARGET CORPORATION,

      Defendant.

_____/


## ORDER GRANTING SUMMARY JUDGMENT


      Pending before the Court is Defendant's Motion for Summary Judgment and documents in support thereof (Docs. 42, 43, 46, 64, 69). Plaintiff timely filed a memorandum and evidentiary materials in opposition (Docs. 52-55, 66). The Court has taken the matter under advisement (Doc. 48) and is now prepared to rule on Defendant's motion. For the reasons stated below, Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

Plaintiff brings claims of discrimination and harassment under the Americans with Disabilities Act of 1990 (ADA), and claims of retaliation under Title VII of the Civil Rights Act of 1964. Plaintiff also brings all related claims under the Florida Civil Rights Act (FCRA).[1] Defendant seeks dismissal on summary judgment as to all claims.

The facts of the case are essentially free of dispute. Plaintiff was hired by Target at its store in Daphne, Alabama, on January 13, 1992, and in September of 2000, she was promoted to assistant manager at the store. During 2000, however, Plaintiff developed fibromyalgia, an arthritic condition. She made this known to store management and also made multiple requests for accommodation of her condition. These requests were denied by Target, primarily by Plaintiff's manager at the Daphne store, Joe Henry. Moreover, according to Plaintiff, Henry began a course of harassment activity against Plaintiff related to her disability, which included ridiculing her and calling her names, disparaging the ADA and disabled individuals, ignoring her doctor recommendations for work, increasing her workload and the amount of time she spent on undesirable workshifts, and telling her she was unreliable.

---

[1] While both Plaintiff's ADA and Title VII claims are also raised under the FCRA, it has been uniformly held that FCRA claims should be analyzed identically with the ADA and Title VII frameworks. *See Brand v. Florida Power Corp.*, 633 So.2d 504, 509 (Fla. 1st DCA 1994); *Florida Dep't of Community Affairs v. Bryant*, 586 So.2d 1205 (Fla. 1st DCA 1991); *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000). Accordingly, the Court considers Plaintiff's FCRA claims as subsumed under her ADA and Title VII claims.

In February of 2002, Plaintiff recommended two black female employees for promotion, but Henry hired individuals from outside for the promotional positions. Plaintiff reported this to a district-level human resources manager and relayed statements from the black employees that they believed they were discriminated against. Also during this time, Plaintiff was instructed to discharge another black employee, Jackie McCann, who in Plaintiff's opinion, which she verbalized to management, should not be discharged because it was inconsistent with company policy. McCann subsequently filed a Title VII action against Target, claiming she was fired because of her race.

At least partly because of her stressful situation at work, Plaintiff sought a transfer to a Target store in Mary Esther, Florida. As arranged by Don Lowman, the Team Leader for the Mary Esther District, whom Plaintiff had contacted, this transfer was achieved in June of 2002. Upon her arrival, Plaintiff informed her new manager, Casey Nalezny, about her fibromyalgia and her difficulties with Henry after she requested accommodation. Nalezny made efforts to accommodate her condition by giving her more supervisory tasks and allowing her to take more breaks during her shift as necessary. Plaintiff also informed Nalezny about McCann's termination at the Daphne store and her objections to it. Plaintiff expressed anxiety about whether she would have to participate in an investigation that was being conducted as a result of the legal action McCann had taken. Nalezny subsequently discussed the matter with Lowman, who affirmed that Plaintiff would have to take a deposition regarding the matter.

In August of 2002, a deposition was conducted via telephone in an office at the Mary Esther store.  Nalezny was in the office and could hear Plaintiff's end of the conversation, which essentially reflected what Plaintiff had said to Nalezny earlier.  Plaintiff stated that she disagreed with McCann's termination, that she was "not on board" with Target on this matter, and that her testimony "would hurt more than help" Target.  *See* doc. 52 at 5.

Plaintiff's employment at the Mary Esther store continued without incident until November 14, 2002, when she failed to perform certain cash-handling tasks as part of her management duties during the closing of the store for the night.  Specifically, it was Plaintiff's duty to make sure that an employee under her supervision had emptied all the individual cashier drawers in the store and had placed the cash into the appropriate money bags and placed the bags into a type of drop chute from outside the "safe room" located somewhere inside the store.  Second, it was her responsibility to go into the safe room, verify that all bags had been dropped into the chute, remove the bags from the chute and lock them into a safe.  Plaintiff failed to perform both of these duties, and as a result, two of the cash drawers in the store were not empted, and the money bags were left in the chute where they could be accessed from outside the safe room.

When informed about these mistakes, Nalezny, whose duty it was to discipline Plaintiff, had to decide whether to classify the mistakes as "Detrimental Behavior" or "Negligent Behavior" according to the company disciplinary scheme.  According to the scheme, the former can result in termination of the employee, while the latter would result

in a lesser sanction, typically a "final warning" for security violations of this type.[2]  Because there were two separate violations, Nalezny believed they should be classified as "Detrimental Behavior."  Nalezny consulted with Don Lowman; Lynn Collins, a regional human resources manager; and Charles Creech, a "District Assets Protection Team Leader," regarding the classifications.  All concurred with Nalezny's assessment.  Ultimately, the decision rested with Nalezny, who classified the mistake as detrimental, and Plaintiff was terminated from employment on December 3, 2002.

On March 14, 2003, Plaintiff filed a claim of discrimination with the Equal Employment Opportunity Commission (EEOC), and on June 17, 2004, she received her "Right to Sue" letter.  On June 29, 2004, Plaintiff filed the instant lawsuit.


## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[2]  Under Target's disciplinary scheme, Detrimental Behavior can encompass, among other things, conduct that constitutes "becoming a security risk," and this was how Plaintiff's mistakes were classified. Detrimental Behavior allows for termination for a first offense.  By contrast, Negligent Behavior is less serious and is part of a progressive scheme of consequences for actions instituted by Target.  It does, however, allow for a "final warning" for a first offense, signaling that a subsequent offense can result in termination.

322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See id.* at 249, 106 S. Ct. at 2510–11. A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S. Ct. at 2511. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's

position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512).

**B. Discussion**

As an initial matter, the Court notes that the parties agree that those events that transpired at the Daphne store do not form the basis of any of Plaintiff's claims. Rather, as Plaintiff concedes, they are only background information relevant to her claims of retaliation and discrimination at the Mary Esther store. As Plaintiff does not complain about her treatment while at the Mary Esther store but only about her discharge, that discharge is the only alleged discriminatory or retaliatory act with which the Court is concerned.[3]

In Claim One, Plaintiff asserts that she was discriminated against on account of her disability in violation of the ADA and FCRA. Thus, Plaintiff essentially claims that she was fired because of her disability.

Claims of discrimination under the ADA are analyzed under the same three-part test employed in Title VII cases under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000). First, the employee must present a prima facie case of disability discrimination. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir.2004). To do this, the employee must establish 1) that she was disabled, as that term is defined under the ADA; 2) that she was qualified

---

[3] Defendant contends that the Daphne store events could not form the basis of Plaintiff's claims because 1) her filing with the EEOC would have been untimely as to them and, 2) as far as it concerns her FCRA claims, they did not occur in Florida. Because of Plaintiff's concession, and because summary judgment will be granted on other grounds, the Court need not consider these particular arguments any further.

to perform her job, with or without reasonable accommodation; and 3) that she was subjected to an unlawful discriminatory discharge because of her disability. *See Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).[4] If a prima facie case is established, the burden of production shifts to the employer who must articulate a legitimate, nondiscriminatory reason for its decision. *See Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). If the employer meets this burden, the employee must then show that the employer's articulated reason was pretextual and that the real reason for the employer's action or decision was the employee's disability. *Id.*

Plaintiff fails to establish a prima facie case. To reiterate, Plaintiff's allegations of disparate or oppressive treatment at the Daphne store are of no help in this regard, as Plaintiff draws no connection between her treatment there and her ultimate discharge at the Mary Esther store. Plaintiff in fact acknowledges that, once she arrived at the Mary Esther store, Nalezny was helpful and accommodating to her disability, and she had no complaints regarding her treatment at the store. Plaintiff's lone effort to establish a discriminatory nexus is to recite the fact that, before the security incident for which she was fired arose, Nalezny had sent a November 11, 2002, memorandum to Lynn Collins concerning the documentation of Plaintiff's disability and her doctor's recommendations as to work restrictions.[5] The memorandum states that such documentation would be forthcoming since Plaintiff had an upcoming appointment with her doctor. There is no indication of conflict or animosity or anything else that might suggest that this memorandum was anything but a routine matter.

_____

[4] Defendant argues that Plaintiff's fibromyalgia does not amount to a disability under the ADA because she was at least partially able to perform work tasks. Because of the Court's ruling as that Plaintiff's firing was not discriminatory, the Court need not resolve whether Defendant's contention is correct.

[5] Plaintiff does not even include this fact in her statement of facts but makes only one reference to it, without further comment, in her summary judgment response.

Moreover, Defendant articulates a valid reason for Plaintiff's discharge. Indeed, Plaintiff freely admits to the two violations of the store's security rules. Instead, in an effort to establish that similarly situated employees at the Target store were treated more favorably than she, Plaintiff attacks the classification of her violations as Detrimental Behavior and cites to a handful of other incidents where other Target employees committed similar violations but were classified as Negligent and issued final warnings. Plaintiff primarily focuses on two incidents wherein other employees, albeit at different stores in Lakeland, Florida, failed to lock the front door to the store but were only issued final warnings instead of being terminated. Plaintiff argues that these violations were more serious than her own because they exposed the store inventory, which was worth more than the money Plaintiff placed into jeopardy. However, this overlooks the fact that, inherent in the disciplinary scheme is that all such security violations are treated more or less equally. In other words, Plaintiff may argue, correctly or not, that her violations were not as serious, but this does not alter the fact that all of the pertinent violations are classified the same, and the classification scheme is certainly not facially discriminatory. As with all classification schemes, there may be a certain amount of variance within the classification, but that fact alone does not render the classification erroneous – and that is precisely what Plaintiff is trying to prove, unsuccessfully.[6]

---

[6] This is not to suggest that the Court necessarily agrees with Plaintiff that the violations that occurred at the Lakeland stores were worse than hers. Although the "front door" violations may have placed the entire store inventory – and thus more monetary value – at risk, the degree of risk may not have been as great as with Plaintiff's violations. Such factors as the amount of difficulty in accomplishing the theft; the likelihood of being spotted and apprehended; how easily the exposure to risk (that is, noticing an unlocked door versus noticing money in the money chute or the cash drawer) might be recognized by those predisposed to theft; and the type of persons, including store employees, who might notice the opportunity should all be considered in this calculus. Of course, this analysis need not be completed, for as long as the Court finds, as it does, that the classification is not itself discriminatory, any further evaluation of the classification scheme is best left to Target officials.

Thus, the overarching consideration in this case is the inescapable fact that Plaintiff was discharged for committing two violations, while those with whom she claimed to be on equal footing committed only one. The Court has no reason to find that Nalezny's actions were anything other than consistent with normal and legitimate company policy. Plaintiff therefore has failed to establish evidence of a discriminatory motive.

In Claim Two, Plaintiff asserts that she her rights under the ADA and FCRA were violated in that she was subjected to a hostile work environment because of her disability. To establish a prima facie case of discrimination based upon a hostile working environment, an employee must demonstrate that 1) she belongs to a protected class; 2) she was subjected to unwelcome harassment in the workplace; 3) the harassment was based on her protected status; 4) the harassment affected a term, condition, or privilege of her employment; and (5) a basis for holding the employer liable. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). To satisfy the fourth element, conduct must be objectively "sufficiently severe or pervasive to alter the conditions of the victim's employment and create a discriminatorily abusive working environment." *Id.* (citing Mendoza v. Borden, 195 F.3d 1238, 1245 (11th Cir. 1999)).

Even more so than with her claim of ADA discrimination, Plaintiff's harassment claim suffers from a distinct loss of momentum at the point of her transfer to the Mary Esther store where she was admittedly treated satisfactorily and accommodated as far as her disability. In fact, Plaintiff's entire factual basis relative to this claim derives from actions taken against her at the Daphne store. The only fathomable nexus that could be relevant would be to say that somehow Plaintiff's harassment eventuated her termination at the Mary Esther store, but this is too attenuated

a connection, and Plaintiff does not even try to establish it.  The Court therefore finds Plaintiff's hostile work environment claim to be without merit.

The Court will address claims Three and Four together since they both claim retaliatory discharge against Plaintiff because of her participation in the McCann firing and investigation.  To establish a prima facie claim of retaliatory discharge, the employee must demonstrate that 1) she engaged in protected conduct; 2) she suffered an adverse employment action; and 3) the adverse action was causally related to the protected expression.  *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998).  If a prima facie case is established, the burden shifts to the employer to provide legitimate non-discriminatory reasons for its actions, and if this is accomplished, the employee must then show that the employer's proffered reasons are a pretextual ruse designed to mask retaliation.  *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

Plaintiff attempts to draw a retaliatory link between her opposition to McCann's firing and her own eventual discharge.  As Plaintiff relates, she openly aired her views that she thought McCann's firing was discriminatory, or that she disagreed with management's views on the matter.  However, as with her previous claims, much of this activity occurred while Plaintiff was at the Daphne store.  The only relevant occurrence at the Mary Esther store was Plaintiff's telephonic deposition (together with Plaintiff's discussion with Nalezny that preceded the deposition), and in fact this is all Plaintiff draws upon to establish a retaliatory nexus.  The problem here is that Plaintiff's discharge occurred three months after the deposition, and there is no indication that the deposition  or anything else related to the McCain matter was on anyone's mind during this three month period.  Plaintiff nevertheless tries to establish the nexus from the "suspect timing" of the two

events. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).

In establishing a causal connection between the adverse action and protected activity as is necessary to make a prima facie showing of retaliation, it may be sufficient to show that the protected activity and the adverse action were not "wholly unrelated." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). In turn, a "close temporal proximity" between the two events may be sufficient, as the only evidence, for the employee to establish that the two are not "wholly unrelated." *Id.* As is pertinent in this case, a range of three to four months appears to be on the cusp of what is considered close enough temporally. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001), and other cases). Beyond definitively longer or shorter periods, it would seem unwise to reduce the analysis to a mere counting of days; nonetheless, if the Court had to do so, it would follow *Higdon*, which held that a three month period was insufficient to establish "close temporal proximity."

However, in this case there is more to go on. First, the record is devoid of any indication that there might be a retaliatory animus at work; Plaintiff worked a normal schedule, far from the troubles she experienced at the Daphne store. She got along well with her new supervisor, who seemed to have her best interests in mind. The record, far from suggesting any growing animosity toward Plaintiff, simply shows the occurrence of an intervening event, Plaintiff's security errors.[7] There is

---

[7] What is meant by the term "intervening event" becomes clearer when one contrasts this case with many of the cases in this area of the law where the adverse action in question is, for example, a transfer or demotion of the employee, an assignment to more onerous tasks or shifts, or an abrupt or telling change in performance reviews from positive to negative. In all these examples, it is easier to suspect that the employer might have fashioned a hostile response to the employee's protected activity because the decision to take action arguably began with the employer from the start. By comparison, in the case at bar, Plaintiff provided

no dispute from Plaintiff that she committed these errors.  Under these circumstances, and in observance of the three months that transpired before her discharge, the Court finds that Plaintiff has failed to establish a prima facie inference of causation.

Moreover, as was discussed in Claim One, Defendant articulated a valid reason to justify Plaintiff's discharge, thus meeting its burden under the second prong of the *McDonnell Douglas* standard.  In Plaintiff's attempt to establish pretext, the shortcoming of her reliance on timing alone is even more glaring.  It is widely held that timing alone is insufficient to establish pretext.  *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005); *DeBoer v. Musashi Auto Parts, Inc.*, 124 Fed.Appx. 387, 393 (6th Cir. 2005); *Sprague v. Adventures, Inc.*, 121 Fed.Appx. 813, 816 (10th Cir. 2005); *Coulter v. Deloitte Consulting*, 79 Fed.Appx. 864, 867 (6th Cir. 2003); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *Barnes v. Crowne Investments, Inc.*, 391 F.Supp.2d 1108, 1117  (S.D.Ala. 2005); *Dillon v. Carlton*, 977 F.Supp. 1155, 1160 (N.D.Fla. 1997).  This is especially so when the adverse action is in response to admitted conduct by the employee.  *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997); *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 834 (8th Cir. 2002) (finding that the employee's misconduct "gives an explanation for the temporal proximity other than a retaliatory motive of the employer").  Therefore, even if the temporal relationship between the two events were alone sufficient to make out a prima facie case, it does not establish pretext so as to defeat Defendant's legitimate reasons for discharging Plaintiff.

---

the impetus for the adverse action when she committed the security errors.  Thus, the action taken by Target is seen more as a response to a situation created by Plaintiff, and in its absence she would have remained employed.  Of course, the Court is aware that Target could have used Plaintiff's mistakes as an opportunity to achieve its discriminatory ends, but in the final analysis, the fact that Plaintiff's errors triggered Target's response makes it all the less likely that Target decided to retaliate against something Plaintiff did three months ago.

### III. SUMMARY

The Court's ruling in this matter may be summarized as follows, and **IT IS HEREBY**

**ORDERED:**

1.     Defendant's Motion for Summary Judgment (Doc. 42) is **GRANTED.**

2.     Consistent with this order, the Clerk of Court is directed to enter summary judgment in favor of the Defendant TARGET CORPORATION.  Plaintiff shall take nothing further by this action and goes without day.

3.     Defendant's motions to strike Plaintiff's claim for punitive damages (Doc. 40) and to strike Plaintiff's claims for back pay and front pay (Doc. 41) are **DENIED** as moot in light of the instant Order.

**ORDERED** on this 14th day of March, 2006.


_____ s/_L.A. Collier_ _____
Lacey A. Collier
Senior United States District Judge